UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

WILLIAM MARCUS COMBS                                                                    PLAINTIFF

v.                                            No. 2:23-cv-02094

FORT SMITH PUBLIC SCHOOLS                                                             DEFENDANT

**OPINION AND ORDER**

Before the Court are Defendant Fort Smith Public Schools' ("FSPS") motion for summary judgment (Doc. 18), brief in support (Doc. 21, redacted version at Doc. 19), and statement of facts (Doc. 22, redacted version at Doc. 20). Plaintiff William Combs filed a response in opposition (Doc. 26, redacted version at Doc. 24) and statement of facts (Doc. 25, redacted version at Doc. 23). FSPS filed a reply (Doc. 27). For the reasons stated below, the motion will be GRANTED.

**I.   Background**[1]

   *a.   General Background*

Mr. Combs is paralyzed from the waist down and must use a wheelchair. (Doc. 25, p. 11). In the past, he has worked for a number of children's organizations, interned for the Athletic Department at the University of Central Arkansas, and managed his family's investment properties. *Id.* More recently, he spent a year as a full-time teacher at Arkoma High School, another year as an assistant coach and as-needed substitute teacher at Ramsey Middle School, and two years as an assistant basketball coach and substitute teacher at Trinity Junior High. *Id.* at 12–14.

---

[1] These facts are derived from the parties' briefs and statements of fact. All disputes of fact are resolved in Mr. Combs' favor as the nonmovant. *Schottel v. Neb. State Coll. Sys.*, 42 F.4th 976, 981 (8th Cir. 2022).

1

Between 2013 and 2021, Mr. Combs worked as a substitute teacher for FSPS. (Doc. 25, p. 12). During that time, Mr. Combs completed 11 long-term substitute teaching assignments. *Id.* at 9. These assignments involved doing the same work as permanent teachers at the school, including teaching classes, entering grades, taking attendance, and submitting lesson plans. *Id.* During one such assignment, Mr. Combs was named Teacher of the Month. *Id.* In March 2021, Mr. Combs stopped working as a substitute because the job would disqualify him from disability benefits without providing any guarantee of steady future income. *Id.* at 12.

Mr. Combs "want[s] to work" for FSPS. (Doc. 25, p. 13). Indeed, over the past eight years, he has applied for 20 different teaching positions with FSPS. *Id.* at 3. These applications (an individual application for each position, as required by FSPS's hiring protocols) resulted in a total of four to five interviews with FSPS, but no offer of permanent employment. *Id.* at 3–4. To Mr. Combs' knowledge, FSPS does not employ any wheelchair users. *Id.* at 11.

In one instance, after completing six long-term assignments at Carnall Elementary, the principal of that school encouraged Mr. Combs to apply for a permanent position there. (Doc. 25, p. 3). At FSPS, principals review the applications of candidates, decide which candidates to interview, and make a recommendation to the Assistant Superintendent of Human Resources regarding who should be hired. *Id.* at 4, 6. However, despite the Carnall principal's efforts to hire Mr. Combs for at least one position, she reported to Mr. Combs in 2020 that FSPS was "blocking" him from getting hired. *Id.* at 4. The current Assistant Superintendent of Human Resources for FSPS, Christopher Davis, states that he generally hires principals' chosen candidates as long as they are properly licensed and pass a background check. *Id.* at 6. However, Davis has only held this position since 2021. *Id.* at 2.

FSPS has a policy of favoring internal candidates for open positions. (Doc. 25, pp. 7–8). This is particularly true where the hiring principal has "recent personal knowledge" of an internal applicant's work. *Id.* at 8. Substitutes, however, are not considered internal candidates under FSPS policy. *Id.* Mr. Combs has observed that "every sub I know does not get a job." *Id.* at 22. In Mr. Combs' experience, other external candidates are given priority over Mr. Combs; he claims that if there is no internal candidate, FSPS will "take anybody breathing. . . . [e]xcept me[.]" *Id.* at 8.

Mr. Combs has not filed EEOC charges relating to the Carnall Elementary job or any other job application submitted prior to 2022. (Doc. 25, p. 2). He filed two EEOC charges relating to positions he applied for in August of 2022. *Id.* at 1. The first of these positions was a combined career and technical education ("CTE") teacher/7th grade girls' basketball coach position at Chaffin Middle School. *Id.* The second was a PE teacher/9th grade assistant volleyball coach position at Belle Point. *Id.* Mr. Combs' applications for these positions are discussed in greater detail below. Mr. Combs also applied for a position in 2023 for which he was not hired, but he did not file an EEOC charge relating to that job. *Id.* at 2.

   b.  *Chaffin Middle School*

While the position at Chaffin included both CTE and coaching components, "[w]hen hiring licensed teachers with coaching duties, the primary focus is on finding a candidate who would best support the educational environment." (Doc. 25, p. 10). "The coaching role is secondary, especially for coaching lower grades and assistant coaching positions." *Id.*

Before applying to the CTE/basketball coach position at Chaffin, Mr. Combs served as a long-term substitute there. (Doc. 25, p. 9). Chaffin's principal, Todd Marshall, was familiar with Mr. Combs. *Id.*

3

Mr. Combs' application listed his experience as a substitute teacher at FSPS and Trinity Junior High School.  (Doc. 25, p. 12).  Mr. Combs also provided positive references from FSPS teachers and coaches.  *Id.* at 19.  However, Mr. Combs incorrectly stated that he started at FSPS in 2011 as opposed to 2013, and he did not mention the frequency or length of his substitute work for FSPD.  *Id.* at 12.  In addition to these deficiencies, Mr. Combs' application did not mention his experience at Arkoma High School or Ramsey Middle School, and it reflected that his teaching license was expired.  *Id.* at 13–14.  Despite this, Principal Marshell selected Mr. Combs for an interview.  *Id.* at 17.

Two other candidates were also selected for interviews.  (Doc. 25, p. 17).  The first, whom the Court will call "Ms. Yanick," was a then-current Chaffin employee working as a math interventionist.  *Id.*  Principal Marshell was familiar with Ms. Yanick's work and knew that she got along well with the students.  *Id.* at 18.  While she had positive references, including some from FSPS employees, she had no prior coaching experience.  *Id.* at 17–18.  Ms. Yanick was also teaching under a provisional license, meaning that she was considered qualified in her subject matter but was still taking courses towards certification as a teacher.  *Id.* at 18.

The second interviewee, whom the Court will call "Mr. Zimmerman," was also an external applicant.  (Doc. 18, p. 5).  Mr. Zimmerman had 20 years of teaching experience and 10 years of coaching experience at the high-school level.  *Id.*

Mr. Combs was interviewed by Principal Marshell and other relevant Chaffin staff members, including the athletic director.  (Doc. 25, p. 17).  During the interview, Mr. Combs clarified that he had experience at Arkoma, Trinity, and Ramsey.  *Id.* at 16.  Following the interview, the Chaffin athletic director checked Mr. Combs' references, which involved contacting Trinity.  *Id.* at 19.  The contact at Trinity said that Mr. Combs had "an aggressive coaching style

4

and courtside demeanor that likely was not ideal for a 7th grade team." *Id.*  The athletic director passed these comments along to Marshell.  Ultimately, the two decided that Ms. Yanick was the best fit for the position.  Mr. Combs testified that he believed Marshell "did it right" during the hiring process and would not engage in discriminatory conduct.  *Id.*

Principal Marshell recommended to Superintendent Davis that FSPS hire Ms. Yanick. (Doc. 18-3, p. 4).  Besides Marshell's recommendation, Davis knew that Ms. Yanick's current position was being eliminated.  *Id.*  In line with the policy favoring internal candidates, Davis stated that he wanted to give Ms. Yanick the chance to stay with FSPS.  Accordingly, he approved Marshell's recommendation, and Ms. Yanick was hired for the Chaffin position.  *Id.*

    c. *Belle Point*

The PE teacher/assistant 9th grade volleyball coach position at Belle Point was posted on August 11, 2022. (Doc. 25, p. 19).  Applications were accepted on a rolling basis.  *Id.* at 20.  Final interviews for the position were conducted on August 18, 2022.  *Id.*  As of that date, due to the nature of the rolling application process, no more applications were reviewed.  However, Mr. Combs did not submit an application for the position until August 19, 2022.  Accordingly, his application was not considered.  *Id.*

Matthew Hominick, the principal of Belle Point, ultimately recommended a candidate the court will call "Mr. Archer" for the position.  (Doc. 25, pp. 5, 21).  Mr. Archer was an FSPS employee, and his application stated that he was provisionally licensed to teach PE until 2025.  *Id.* at 21.  However, when reviewing Mr. Archer's credentials, Superintendent Davis discovered that Mr. Archer did not have a current provisional license.  *Id.*  As a result, Davis did not approve Hominick's recommendation and asked Hominick to recommend a new candidate.  *Id.*  Hominick then recommended his second choice from among the applicants interviewed, a man the Court will

call "Mr. Bradbury." *Id.* at 22. Mr. Bradbury already worked for FSPS as a PE teacher and had previous experience as a basketball coach. *Id.*; Doc. 18-3, p. 3.

## II. Legal Standard

On a motion for summary judgment, the moving party has the burden to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[A] nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quotations omitted). The record must be construed in the nonmovant's favor, with "the 'benefit of all reasonable inferences in the record.'" *Schottel*, 42 F.4th at 981 (quotation omitted).

Mr. Combs brings suit under the Americans with Disabilities Act of 1990 ("ADA") and the Arkansas Civil Rights Act ("ACRA"). The ADA and ACRA employ the same analysis. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002). First, a plaintiff must show that he is disabled under the ADA, can perform the essential functions of a job, and suffered an adverse employment action as a result of his disability. *Id.* Then the burden of production shifts to the defendant "to proffer a legitimate, nondiscriminatory reason for the adverse action." *Voss v. Hous. Auth. of the City of Magnolia*, 917 F.3d 618, 624 (8th Cir. 2019). If the defendant meets this burden of production, the plaintiff must "demonstrate the articulated reason was a pretext for discrimination." *Id.*

## III. Analysis

a. *Non-Preserved Claims*

"The ADA requires a plaintiff to file a complaint with the EEOC before filing a suit in federal court," and "[e]ach incident of discrimination constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC."  *Voss*, 917 F.3d at 623 (emphasis, quotations, and citations omitted).  Therefore, the only two failures to hire that Mr. Combs may challenge under the ADA are the Chaffin and Belle Point positions he applied for in August 2022.

Similarly, the ACRA requires that an employment discrimination action "shall be brought within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a 'Right to Sue' letter or a notice of 'Determination' from the [EEOC]."  Ark. Code Ann. § 16-123-107(c)(4).  Mr. Combs filed this case on July 13, 2023.  However, Mr. Combs only applied to three positions after July 13, 2022: the Chaffin and Belle Point positions and a third position in 2023.  (Doc. 23-1, p. 1).  These are therefore the only applications for which Mr. Combs can state claims under the ACRA.

b. *The 2023 Application*

Mr. Combs cannot make the required initial showing of discrimination for an ACRA claim based on the 2023 application.  The parties do not dispute that Mr. Combs is disabled within the meaning of the ADA.  However, apart from noting in one document that the 2023 job posting was for a "Physical Education Teacher, 8th Grade Girls Basketball an" (the text cuts off there), the record contains no evidence as to whether Mr. Combs was qualified for the job or could perform the job's essential functions.  Accordingly, because Mr. Combs has not met his initial burden under the ADA, he is not entitled to relief under the ACRA.  *See Brown v. City of Jacksonville*, 711 F.3d

7

883, 892 (8th Cir. 2019) (summary judgment proper where record did not support prima facie case of discrimination).

    c. *The Chaffin Position*

FSPS does not contest that Mr. Combs can make out a prima facie case of disability discrimination for the Chaffin CTE/7th grade basketball coach position. Instead, FSPS proffers two nondiscriminatory explanations for its failure to hire Mr. Combs: its preference for internal candidates and concerns about Mr. Combs' coaching style. Both of these are permissible considerations when making a hiring decision. *See Chambers v. Met. Prop. and Cas. Ins. Co.*, 351 F.3d 848, 857–58 (8th Cir. 2003) (candidate's aggressive communication style was a legitimate, nondiscriminatory reason for failure to hire); *Cline v. BWXT Y-12, LLC*, 521 F.3d 507, 510 (6th Cir. 2008) (internal-preference policy was a legitimate, nondiscriminatory basis for hiring decision). Under *Voss*, it is now Mr. Combs' burden to "demonstrate the articulated reason was a pretext for discrimination." 917 F.3d at 624. To demonstrate pretext in a discrimination case, a plaintiff may either "present evidence the proffered reason has no basis in fact" or demonstrate that "a prohibited reason is more likely." *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) (internal quotations and alterations omitted).

In this case, there is no evidence that FSPS's proffered reasons were not based in fact. Mr. Combs does not dispute that FSPS has a hiring policy favoring internal candidates. That policy was particularly evident here, as FSPS selected Ms. Yanick (who had only briefly worked as a full-time teacher and had not coached before) over Mr. Zimmerman (who had taught for 20 years and coached for 10). If, as Mr. Combs argues, the job would have gone to the individual with the most relevant experience but for FSPS's disability discrimination, Mr. Zimmerman should have received the job over Ms. Yanick. As for Mr. Combs' temperament, FSPS was influenced in its

decision by the fact that Ms. Yanick got along well with the students at Chaffin. This indicates that FSPS did indeed take future student-coach interactions into account when evaluating the candidates.[2] Therefore, Mr. Combs has not demonstrated that FSPS's proffered reasons for failing to hire him were not based in fact.

Further, Mr. Combs has not presented sufficient evidence to indicate that a prohibited reason was a more likely explanation for FSPS's failure to hire him. While he has testified that he was "blocked" from being hired by FSPS in 2020, it is undisputed that that decision involved a different set of decisionmakers: another school, another principal, and a previous superintendent. There is no indication that FSPS has a standing policy of "blocking" Mr. Combs from being hired. Even if Mr. Combs' repeated failed applications could be taken as some evidence of such a policy, there is no evidence that this "blocking" is motivated by Mr. Combs' disability as opposed to his temperament, his status as a substitute teacher, or any other number of unprotected factors. "For [a decisionmaker's] alleged discriminatory motive and conduct to be a triable issue, [a plaintiff] would have to substantiate his allegations with sufficient probative evidence that would permit a finding in his favor based on more than mere speculation, conjecture, or fantasy." *Amini v. City of Minneapolis*, 643 F.3d 1068, 1075 (8th Cir. 2011) (internal quotations omitted).

Because Mr. Combs has failed to rebut FSPS's proffered reasons for its failure to hire him, summary judgment is proper on his claims relating to the Chaffin position.

d. *The Belle Point Position*

FSPS's proffered reason for denying Mr. Combs the Belle Point PE teacher/volleyball coach position is straightforward: it accepted applications on a rolling basis, held final interviews

---

[2] FSPS's choice to prioritize positive student-coach interactions over coaching quality is a permissible one. "Prioritizing a certain set of skills over others is a legitimate, nondiscriminatory reason for a hiring decision." *Farver*, 931 F.3d at 812.

9

before Mr. Combs' application was submitted, consequently never reviewed Mr. Combs' application, and filled the position from among the pool of interviewees. Mr. Combs does not dispute any of these facts, so he cannot claim that FSPS's proffered reason was not based in fact. And because Mr. Combs agrees that the nature of the rolling application process resulted in his application not even being reviewed, he cannot claim that discrimination was a more likely reason for his not being hired. Accordingly, summary judgment is appropriate as to Mr. Combs' claims regarding the Belle Point position.

## IV. Conclusion

IT IS THEREFORE ORDERED that FSPS's motion for summary judgment (Doc. 18) is GRANTED and Mr. Combs' claims are DISMISSED WITH PREJUDICE. Judgment will be entered accordingly.

IT IS SO ORDERED this 9th day of August, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE